UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RACHEAL BREA JOHNSON,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

CASE NO. 2:18-cv-00301-BAT

**ORDER REVERSING AND REMANDING**

Plaintiff seeks review of the decision of the Administrative Law Judge (ALJ) that her disability ended on January 26, 2016 due to medical improvement of her physical conditions. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff suffered a complex set of injuries on September 17, 2012, when a semi-truck rear-ended her car and caused her to hit the car in front of her. She developed fairly severe neck and upper back pain. She also had a right lower extremity injury but this resolved and was not further evaluated. Plaintiff failed to improve with conservative treatment and in December 2012, a cervical MRI scan revealed disc abnormalities at the C5-6 level. She was initially evaluated by a physician assistant at the neurosurgery department at Group Health. After receiving a second opinion from Jason Thompson M.D., an orthopedic surgeon specializing in spine surgery, she

**ORDER REVERSING AND REMANDING** - 1

underwent cervical fusion surgery in June 2014 but she did not have any significant improvement in her condition. Tr. 846-847 (Summary of Plaintiff's condition by treating physician Richard Seroussi, M.D., M.Sc.)

Plaintiff applied for Title II disability on October 21, 2014 and Title XVI on November 3, 2014, alleging disability in both applications beginning June 16, 2014. After the claim was denied initially and upon reconsideration, a hearing was requested and took place on August 18, 2016. The ALJ issued a partially favorable decision on January 12, 2017, finding that Plaintiff was disabled from June 16, 2014 to January 26, 2016. The ALJ held that as of January 27, 2016, Plaintiff was no longer disabled. Plaintiff filed a request for review on June 19, 2017 after being granted an extension. Tr. 458-63; 1-33. The Appeals Council denied review on January 8, 2018. Tr. 86-92. Plaintiff appealed on February 27, 2018. Dkt. 1. The period in question is from January 27, 2016 to January 12, 2017.

## THE ALJ'S DECISION

Plaintiff met the insured status for SSDI through December 31, 2019 and she has not worked since her alleged onset date of June 16, 2014. For the period of June 16, 2014 through January 26, 2016, Plaintiff's severe conditions include cervical spine degenerative disc disease status post anterior cervical discectomy and fusion with upper extremity dysfunction, headaches, obesity, major depressive disorder, adjustment disorder, generalized anxiety disorder and PTSD. Tr. 63. After determining that Plaintiff's conditions did not meet or equal a listing level disabling condition, the ALJ determined that for the period of June 16, 2014 to January 26, 2016, Plaintiff had the ability to perform sedentary work except she could not rotate her neck, she could occasionally reach below shoulder level, she was unable to maintain regular attendance and be

**ORDER REVERSING AND REMANDING** - 2

punctual within customary tolerances. Tr. 64. This resulted in a finding that Plaintiff was unable to do her past work or any other work that existed in the national economy. Tr. 69.

The ALJ found that as of January 27, 2016, Plaintiff was no longer disabled because medical improvement had occurred. Tr. 71. Plaintiff's severe conditions had not changed but the ALJ determined that Plaintiff now had the residual functional capacity (RFC) to perform light work with some limitations:

> After careful consideration of the entire record, I find that beginning January 27, 2016, the claimant has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except as follows: She can occasionally reach forward to full extension. She can occasionally reach waist to shoulder fully extended. She can frequently to constantly reach forward partially extended. She can perform occasional overhead reaching and frequent keyboarding. She can constantly handle and finger, but occasionally forcefully grasp. She can operate foot controls occasionally bilaterally. She can occasionally balance, stoop, kneel and crouch. She can never climb or crawl. She must avoid moderate exposure to vibrations and hazards. She cannot perform work that requires rapid or repeated rotation of her head from side-to-side as would be necessary to drive. However, the claimant can turn her head and body as necessary to look side-to-side. She cannot perform work that requires rapid or repeated flexing of the neck as might be required by a surgeon by moving the head forward or by bending the joint resulting in a decrease of angle. However, the claimant is able to flex her neck and use her eyes sufficiently to look down. Similarly, there is no requirement for the claimant to rapidly or repeatedly extend her neck, as such as might be required by an electrician doing overhead work, by moving the head backwards or by bending the joint resulting in an increase of angle. However, she is able to extend her neck and use her eyes sufficiently to look up. She can perform simple, routine tasks and follow short simple instructions. She could do work that needs little or no judgment and could perform simple duties that can be learned on the job in a short period. She can work in an environment with minimal supervisor contact (Minimal contact does not preclude all contact, rather it means contact does not occur regularly. Minimal contact also does not preclude simple and superficial exchanges and does not preclude being in proximity to the supervisor). She can work in proximity to coworkers but not in a cooperative or team effort. She requires a work environment that has no more than superficial interactions with co-workers. She can work positions that do not deal with the general public as in a sales position or where the general public is frequently encountered as an essential element of the work process. She can perform positions with incidental contact of a superficial nature with the general public.

**ORDER REVERSING AND REMANDING** - 3

Tr. 73. The ALJ again found Plaintiff unable to perform any past work but at step 5, based upon testimony of a vocational expert, the ALJ determined she could do the following jobs:

1. Office helper, DOT 239.567-010, light, SVP 2, unskilled, 74,000 jobs US;

2. Small products assembler, DOT 706.634-022, light, SVP 2, unskilled, 206,000 jobs US; and

3. Library page, DOT 249.687-014, light, SVP 3, unskilled, 16,000 jobs US.

Tr. 78.

## DISCUSSION

**A.     The ALJ Erred in Determining Plaintiff is No Longer Disabled**

"Once a claimant has been found to be disabled, . . . a presumption of continuing disability arises in her favor[, and the Commissioner] bears the burden of producing evidence sufficient to rebut this presumption of continuing disability." *Bellamy v. Secretary of Health & Human Serv.*, 755 F.2d 1380, 1381 (9th Cir. 1985); *Murray v. Heckler*, 722 F.2d 499, 500 (9th Cir. 1983); *Iida v. Heckler*, 705 F.2d 363, 365 (9th Cir. 1983). A claimant is no longer disabled when substantial evidence shows (1) "'there has been any medical improvement in the [claimant's] impairment' and (2) the claimant 'is now able to engage in substantial gainful activity.'" *Attmore v. Colvin*, 827 F.3d 872, 873 (9th Cir. 2016) (quoting 42 U.S.C. § 423(f)(1)). In closed period cases, such as this one, an ALJ should compare the medical evidence used to determine that a claimant was disabled with the evidence existing at the time of medical improvement. *Id.* at 874.

In making his determination that Plaintiff is no longer disabled as of January 26, 2016 and able to perform work at the light exertional level, the ALJ gave significant weight to the Functional Capacity Evaluation (FCE) prepared by Terry Moon, OTR/L and Jacalyn Breidenbach, MPT on January 26, 2016, which the ALJ included in the RFC. The ALJ gave

**ORDER REVERSING AND REMANDING** - 4

substantial weight to the February 10, 2016 report of Richard Seroussi, M.D., M.Sc., which the ALJ deemed not inconsistent with a finding that Plaintiff could return to light work duties as outlined in the RFC. Tr. 76-77.

Functional Capacities Evaluation (FCE)

On January 26, 2016, Terry Moon, OTR/L and Jacalyn Breidenbach, MPT, performed a four-hour physical examination of Plaintiff. Tr. 785-799. Ms. Moon and Ms. Breidenbach prepared a functional capacities evaluation (FCE), which the ALJ adopted and included in the RFC. Plaintiff argues that the RFC contains so many limitations that it would not allow any work, let alone the work identified by the ALJ, and in any event is not consistent with Plaintiff's abilities as are outlined in the FCE.

The ALJ concluded that Plaintiff's function had improved such that she is able to perform the light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) (and limited as articulated in the RFC). Tr. 73. Pursuant to 20 C.F.R. §§ 404.1567(b) and 416.967(b), lifting is limited to 20 pounds with frequent lifting limited to 10 pounds. According to the FCE, it is not safe for Plaintiff to lift 20 pounds floor to waist, 20 pounds waist to shoulder, or 15 pounds from shoulder to overhead, and not safe to carry 20 pounds. Tr. 793-94. In addition, the FCE limits Plaintiff's frequent lifting from floor to waist to 5 pounds but for only 3 hours; lifting to shoulder height is limited to 10 pounds frequently; lifting overhead is not allowed; and frequent carrying is limited to 5 pounds but for only 3 hours. Tr. 936. Range of motion for neck and trunk was tested as significantly restricted. Tr. 940. Thus, it appears Plaintiff does not have the ability in these areas to function for 8 hours a day at a physical level consistent with work at the light exertional level and cannot satisfy the requirements of 20 C.F.R. §§ 404.1567(b) and

**ORDER REVERSING AND REMANDING** - 5

416.967(b).[1]

The ALJ did not specify Plaintiff's abilities regarding sitting, standing, or walking, but SSR 83-10 defines a full range of light work as requiring standing or walking, off and on, for a total of approximately six hours out of an eight hour workday and it appears Plaintiff may lack that ability as well. Tr. 790. Additionally, Plaintiff's prior disability was based on the ALJ's finding, in part, that she was able to perform sedentary work except that she could not rotate her neck. In the FCE, Ms. Moon noted that Plaintiff "should avoid prolonged neck flexion and extension activities. She is able to rotate the neck on a brief and intermittent basis not sustained." Tr. 799. It is unclear what this means or how this affects Plaintiff's ability to perform any type of work in an 8 hour day.

Thus, it appears the data in the FCE, particularly the limitations as to lifting and carrying and with regard to Plaintiff's ability to rotate her neck do not allow for work at the light exertional level even with the exceptions set forth in the RFC.

Richard Seroussi, M.D., M.Sc.

The ALJ was of the opinion that the FCE, and resulting RFC, were consistent with the findings of Plaintiff's treating physician Richard Seroussi, M.D., M.Sc., a physical medicine specialist at Seattle Spine and Sports Medicine, who wrote an extensive assessment about Plaintiff on February 10, 2016 (Tr. 823-49). The ALJ wrote:

> As for the opinion evidence, in February 2016, Dr. Seroussi found the claimant was unable to return to her prior work as a meat cutter and "it is not clear whether she will ever return to heavier physical work or work involving a fair amount of manual dexterity, given the chronicity and severity of her injuries" (10F/26). I give this opinion substantial weight. Dr. Seroussi had the opportunity to examine

---

[1] *See* SSR 96-8p (The RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule).

**ORDER REVERSING AND REMANDING** - 6

> and test the claimant on numerous occasions before opining on her workplace limitations. His opinion is consistent with his own examinations of the claimant showing she continues to have residual symptoms from her cervical surgery that would prevent her from performing her past work or other work at the heavy exertional level. His opinion also does not rule out the claimant's ability to perform other work at a lighter exertional level, which is supported by the objective medical evidence after January 2016 and her performance during the physical functional capacities evaluation showing she remains capable of performing light work with the restrictions identified in the residual functional capacity.

Tr. 77. Plaintiff contends the ALJ erred in concluding that Dr. Seroussi's opinion "does not rule out the claimant's ability to perform work at a lighter exertional level" because the ALJ ignored Dr. Seroussi's opinion that the psychological trauma suffered by Plaintiff prevents her from performing any work at this time without further treatment.

Dr. Seroussi noted probable upper cervical facet joint injury; post traumatic headaches; ongoing distal right worse then left upper extremity dysfunction with possible component of thoracic outlet syndrome versus post traumatic peripheral nerve entrapment; acute lower extremity injury associated with blunt force trauma to the knee (resolved); probable centrally mediated and myofascial components of pain, aggravated by sleep disruption and loss of function; psychological injury with evidence of PTSD and adjustment disorder with depression and anxious features; and marked loss of function, including vocational disability, secondary to the above. Tr. 846. Dr. Seroussi then expressed the belief that Plaintiff should transition to less heavy physical work long term "with vocational consultation retraining" and hoped that "she will not be permanently disabled from any profession after further treatment given above." In broad terms, Dr. Seroussi described that "further treatment" as a more comprehensive approach to alternative pain generators, a more focused treatment for Plaintiff's psychological trauma, and once those issues have been addressed, accommodation for her injuries and program for vocational rehabilitation. Tr. 847-848.

**ORDER REVERSING AND REMANDING** - 7

Regarding Plaintiff's current functional status (vocational, avocational & ADLs), Dr. Seroussi noted "overall her prognosis is poor, although it may be improved with interventions as outlined above." Tr. 849. He also noted that Plaintiff lacked medical insurance which presented a serious issue regarding treatment and rehabilitation; and, her upper extremity symptoms have worsened over time. Tr. 847. This is inconsistent with a finding by the ALJ with medical improvement as of January 26, 2016.

A fair reading of Dr. Seroussi's complete report does not support the ALJ's statement that "[h]is opinion also does not rule out the claimant's ability to perform other work at a lighter exertional level" as Dr. Seroussi does not indicate that Plaintiff is able to return to any type of work without further treatment and rehabilitation. Without explanation, the ALJ ignored medical evidence of Plaintiff's other impairments contained in the material portions of Dr. Seroussi's report and thereby erred. *See, Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996) (legal error where ALJ's findings completely ignore medical evidence without giving specific, legitimate reasons for doing so) (citing *Cotton v. Bowen*, 799 F.2d 1403, 1408-09 (9th Cir. 1986 (per curiam), *superseded by statute on other grounds as recognized in Bunnell v. Sullivan*, 912 F.2d 1149, 1154 (9th Cir. 1990)).

<u>Judith Parker, M.Ed.</u>

Plaintiff also argues that the ALJ failed to provide specific reasons for rejecting the opinion of Judith Parker, M.Ed., a vocational specialist, who examined Plaintiff on May 19, 2016. Tr. 435-446. Ms. Parker concluded that Plaintiff could only function at the sedentary level and that her ability to work was further restricted by the impact of PTSD, anxiety and depression, experienced daily, which would lead to an inability to attend work every day, be on time, or

**ORDER REVERSING AND REMANDING** - 8

complete a productive shift at work so that Plaintiff essentially has no current wage earning capacity. Tr. 445.

The Commissioner argues that the ALJ was not required to consider or mention Ms. Parker's report because it has no probative value as it added nothing to the ALJ's own assessment of the medical evidence. Dkt. 5 at 10-11. This is however, merely a *post hoc* rationalization that attempts to intuit what the ALJ may have been thinking and which this Court need not consider. *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (internal citations omitted); *Stout v. Commissioner of Soc. Sec.,* 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted).

It is the ALJ's responsibility to evaluate the medical evidence and to resolve any ambiguities in the record, *see Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014), and to the extent Ms. Parker trespassed into this territory, the ALJ was free to discount her opinion. However, Ms. Parker is a qualified vocational rehabilitation counselor who interviewed Plaintiff, reviewed medical records, and administered vocational testing prior to formulating her opinion that Plaintiff has no meaningful wage earning capacity at this time. Tr. 445. Because the ALJ did not give a specific reason supported by substantial evidence in the record for disregarding Ms. Parker's statement, he erred. *Smolen*, 80 F.3d at 1288 (An ALJ may reject lay witness testimony "only if [he gives reasons germane to each witness whose testimony he rejects.")

<u>Tasmyn Bowes, Psy.D</u>

In August 2016, Tasmyn Bowes, Psy.D., performed a psychological evaluation of Plaintiff at the request of DSHS and diagnosed Plaintiff with PTSD and persistent depressive

**ORDER REVERSING AND REMANDING** - 9

disorder. Tr. 1395-1411. All information collected was based on what Plaintiff reported to Dr. Bowes. Tr. 1396. Dr. Bowes reviewed no medical records and no prior psychological evaluations. *Id.*

The mental status examination Dr. Bowes administered showed Plaintiff's mood was depressed/anxious and her affect was somewhat blunted, but her thought process was logical, rational and goal directed; she was oriented in all spheres, her memory, perception, fund of knowledge, and insight and judgment were intact. Tr. 1401-1402. In the checkbox portion of the report for rating basic work activities (based on the individual's ability to sustain the activity over a normal workday and workweek on an ongoing, appropriate, and independent basis), Dr. Bowes concluded Plaintiff would be markedly limited in her ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances without special supervision. Tr. 1340. In the remaining categories, she concluded Plaintiff would be only mildly or moderately limited, *i.e.,* Plaintiff was only mildly distracted secondary to pain; her insight and judgment were intact; she would have no more than moderate difficulty learning new tasks, maintaining appropriate behavior or completing a normal workday and workweek without interruptions from her psychologically based symptoms; she would have no more than mild difficulties understanding, remembering and persisting in tasks by following very short and simple instructions; and she could perform routine tasks, adapt to changes, make simple work-related decisions and be aware of normal hazards in the workplace with little difficulty. Trail making testing showed evidence of only mild to moderate cognitive interference likely secondary to anxiety, depression and pain. Tr. 1399-1340.

Plaintiff argues that the ALJ erred in giving little weight to that portion of Dr. Bowes' assessment that Plaintiff is markedly limited in her ability to perform activities within a schedule,

**ORDER REVERSING AND REMANDING** - 10

maintain regular attendance and be punctual within customary tolerances without special supervision. The ALJ did not err as he gave several specific and legitimate reasons for discounting this portion of Dr. Bowes' assessment.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater,* 81 F.3d 21, 830 (9th Cir. 1996) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, *supra*, 81 F.3d at 830-31 (citing *Andrews v. Shalala,* 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d 715 725 (9th Cir.

The ALJ rejected the marked limitation assessment because there was nothing in Plaintiff's performance on the mental status examination, which was largely normal, to indicate such a marked limitation in these areas. Dr. Bowes rated Plaintiff's mood issues as "mild-moderate," anxiety as "moderate," and cognition difficulties as "mild." Tr. 1398-99. These findings appear to be inconsistent with a finding of the marked limitations and Dr. Bowes provided no explanation for either the inconsistencies or the marked limitations. *See, e.g., Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (internal inconsistency is "a clear and convincing reason for not relying on the doctor's opinion[.]"); 20 C.F.R. §§ 404.1527(c)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion."); *see also Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("We have held that the ALJ may permissibly reject check-off reports that do not contain any explanation of the bases

**ORDER REVERSING AND REMANDING** - 11

of their conclusions." (Internal quotation marks, brackets, and ellipses omitted)).

Because Dr. Bowes provided no explanation for her conclusions (Tr. 1396-1410), it was not unreasonable for the ALJ to conclude that the Dr. Bowes' conclusions were based on Plaintiff's self-reported pain and physical limitations. Tr. 77. If a medical source's opinions are based "to a large extent" on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the source's opinion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion. *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199–1200 (9th Cir. 2008). Additionally, an ALJ does not provide clear and convincing reasons for rejecting an examining doctor's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports her ultimate opinion with her own observations. *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001). By this standard the ALJ did not err in rejecting Dr. Bowes' opinion as it was based almost entirely on Plaintiff's self-reported limitations, the credibility of which had already been questioned,[2] and on testing that was entirely within Plaintiff's control, and was not supported by Dr. Bowes' own observations to support her ultimate opinion.

Dr. Bowes also did not review any of Plaintiff's records, which the ALJ found especially troubling in light of evidence that Plaintiff exaggerated her symptoms. Tr. 77, 1396. *See Bayliss*, 427 F.3d at 1217 (a doctor's failure to review other medical records can provide a basis to

---

[2] Plaintiff demonstrated "low effort" and appeared to "self-limit" during testing "indicating that she may be able to perform at a higher physical demands category than her reported self-perception and/or demonstrated capacities during this evaluation;" and her assessment scores (WHODAS, Waddell, and Oswestry) indicated significant disability perception and exaggeration. Tr. 795, 797, 799.

**ORDER REVERSING AND REMANDING** - 12

discount that doctor's opinion). Plaintiff argues that other medical records did not contradict Dr. Bowes' assessment and thus a record review was unnecessary. Dkt. 10 at 12. However, Dr. Meis concluded that Plaintiff's mental health symptoms mostly affected "her quality of life, rather than her function" and that Plaintiff's psychiatric conditions were "fairly treatable with medication management and psychotherapy." Tr. 661. Dr. Meis also questioned the reliability of Plaintiff's allegations because she had a "very strong disability conviction," and he noted the importance of reviewing Plaintiff's medical records to corroborate her allegations. Tr. 661.

Finally, Dr. Bowes stated that the limitations were temporary. Plaintiff states that at that time of her examination, her problems had already been present for two years. Dkt. 10 at 13. Regardless of when Plaintiff's depression began (she reported it began two years before the examination), Dr. Bowes opined that the limitations (contained in the checkbox portion of the report for rating basic work activities) would last only six to twelve months. The ALJ did not err in discounting her opinion on this basis as limitations lasting for less than twelve months are temporary and not disabling. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008).

In summary, the ALJ did not err in denying weight to that portion of Dr. Bowes' assessment that Plaintiff is markedly limited in her ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances without special supervision.

**B.    The Appeals Council – Rejection of Dr. Moisan's Testimony**

Plaintiff submitted a report dated June 19, 2017, from Dr. Joseph A. Moisan, Ed.D., NCC, CCM, a vocational rehabilitation counselor that she procured and submitted to the Appeals Council after the ALJ issued his adverse decision. Tr. 24-33. The Appeals Council included the

evidence in the administrative record but found that it did not "show a reasonable probability that it would change the outcome of the decision." Tr. 87. Because the Appeals Council considered Dr. Moisan's opinion in denying Plaintiff's request for review, it is part of the administrative record and must be considered by this Court. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir.2012)("When the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence.")

Plaintiff argues that Dr. Moisan's opinion illustrates the existence of an inherent conflict between the DOT and the RFC stated by the ALJ. For example, the post January 26, 2016 RFC is limited to occasional reaching (up to 1/3rd of the time) in most directions (Tr. 73) whereas the DOT assumes that reaching is the same in all directions and all the jobs identified by the vocational expert at the hearing require frequent reaching in all directions (up to 2/3rds of the time). According to Dr. Moisan, there is no evidence available showing that these jobs can be done if reaching in any direction is limited to less than the frequent level. Tr. 26.

Dr. Moisan also points out that the ALJ failed to articulate in the RFC how much time the claimant can sit, stand, or walk in an 8 hour day and opines that this is essential in differentiating between work at the sedentary level and work at the light exertional level. (Sedentary work requires the ability to stand and walk 2 of 8 hours and sit for 6 of 8 hours. SSR 96-9p. Light work requires the ability to stand and walk for 6 hours out of an 8 hour day. SSR 83-12). Tr. 26-27.

As to the specific jobs named by the vocational expert at the hearing, Dr. Moisan opines that all the jobs require extensive neck movement in all planes, left, right, up and down. Tr. 27-

29. In addition, the job of office helper is no longer an unskilled job and there are only 3,657 jobs nationally and 50 in Washington; the small products assembler job essentially no longer exists in this country, with 776 jobs in the national economy and 7 in Washington; and the job of library page entails a lot of reaching up or down on shelves and a lot of head movement and requires a lot of contact with coworkers and the general public, activities which were very much limited in the RFC by the ALJ. Tr. 27-28.

While the ALJ was entitled to rely on the testimony of the vocational expert at the hearing, *see Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005), Dr. Moisan's report suggests that the jobs identified by the vocational expert at the hearing require functional skills not included in the RFC limitations and/or that at least two of the jobs may no longer be available in significant number in the national economy. On its face, therefore, the opinion undermines the ALJ's step-five determination that Plaintiff's disability ended on January 27, 2016 as it creates a reasonable possibility of a different outcome.

However, whether the remainder of the record supports giving the opinion weight, controlling or otherwise, is a fact finding exercise that should be performed in the first instance by the ALJ and not this Court. The opinion is probative evidence that cannot simply be deemed inconsistent with the record in an appellate proceeding, without specific and legitimate reasons as laid out by an ALJ.

**C.  Scope of Remand**

Where the ALJ has committed reversible error, the Court has the discretion to remand for further proceedings or to award benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). Only in rare circumstances should a case be remanded for benefits. *See Treichler v. Colvin*, 775 F3d 1090, 1099 (9th Cir. 2014). The Court may remand for an award of benefits

where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)). If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded for further proceedings. *McCartey*, 298 F.3d at 1076.

Here, additional proceedings are required to allow the ALJ to properly reassess medical evidence pertinent to Plaintiff's physical functioning, and to allow the ALJ to consider, in the first instance, the opinions of Ms. Parker and Dr. Moisan.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should reassess the February 10, 2016 opinion of Dr. Seroussi, assess the May 19, 2106 opinion of Judith Parker and June 19, 2017 opinion of Dr. Joseph Mosian, reevaluate the FCE in conjunction with Plaintiff's RFC, which should be reassessed as appropriate, and proceed to steps four and five as needed.

DATED this 6th day of August, 2018.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)). If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded for further proceedings. *McCartey*, 298 F.3d at 1076.

Here, additional proceedings are required to allow the ALJ to properly reassess medical evidence pertinent to Plaintiff's physical functioning, and to allow the ALJ to consider, in the first instance, the opinions of Ms. Parker and Dr. Moisan.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should reassess the February 10, 2016 opinion of Dr. Seroussi, assess the May 19, 2106 opinion of Judith Parker and June 19, 2017 opinion of Dr. Joseph Mosian, reevaluate the FCE in conjunction with Plaintiff's RFC, which should be reassessed as appropriate, and proceed to steps four and five as needed.

DATED this 6th day of August, 2018.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge